**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| DOGLEG RIGHT PARTNERS, LP., et al. | § | |
| | § | |
| vs. | § | CASE NO. 2:07-CV-533-TJW-CE |
| | § | |
| TAYLOR MADE GOLF COMPANY, | § | |
| INC., et al. | § | |

**MEMORANDUM OPINION AND ORDER**

## I.     BACKGROUND

Plaintiffs Dogleg Right Partners, LP and Dogleg Right Corporation ("Plaintiffs") assert

that defendant Taylor Made Golf Company, Inc. ("Defendant") infringes Claim 1 of U.S. Patent

No. 7,004,852 ("the '852 Patent"); Claims 1, 2, 9, 10, and 13-15 of U.S. Patent No. 7,189,169

("the '169 Patent"); and Claims 1-8 of U.S. Patent No. 7,344,450 ("the '450 Patent").  The three

patents-in-suit are related and claim priority from an original application filed January 10, 2002.

The '450 Patent is a continuation of the '169 Patent, which is a continuation of the '852 Patent.

As such, they share substantially the same specification. For simplicity, citations to the common

language of the specification of the patents–in–suit will refer to the specification of the '169

Patent.

## II.     THE INVENTION

The '852 and '169 Patents are directed to golf club heads that allow a user to customize

the location of the center of gravity.  The '450 Patent is directed to a method of adjusting the

center of gravity of a golf club head.  The invention is described in the Summary of the Invention

as being a "club head having a hollow cavity with a weighting port that allows the user to access

the cavity. The weighting port allows a user to place weighting material inside the golf club

head, thereby adjusting or customizing the location of the center of gravity." '169 Patent at 2:18-24.

Claim 1 of the '169 Patent, an illustrative independent claim, recites:

A golf club head comprising:

a relatively thin shell having a plurality of walls that collectively form a hollow club head body comprising a front club head portion having a wall for striking a golf ball, a back club head portion and an original center of gravity prior to addition of any weights;

at least four weights readily user-repositionably secured to said shell of said club head at readily user-accessible spaced-apart locations along the walls of the shell to adjust the center of gravity of the golf club head body;

wherein at least one of said weights is securable in a location that is substantially non-co-linear with the others of said weights to permit adjustment of the center of gravity of the golf club head in at least two axes;

wherein at least a portion of one of said weights is user-repositionably disposed behind and to the heel side of said original center of gravity;

wherein at least a portion of one of said weights is user-repositionably disposed behind and to the toe side of said original center of gravity;

wherein at least a portion of each of two of said weights is user-repositionably disposed in front of said original center of gravity; and

wherein each of said weights is interchangeably repositionable by the user at each of said locations.

## III. GENERAL PRINCIPLES GOVERNING CLAIM CONSTRUCTION

"A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999). Claim construction is an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, the court looks to three primary sources: the claims,

the specification, and the prosecution history. *Markman*, 52 F.3d at 979. The specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. *Id.* A patent's claims must be read in view of the specification, of which they are a part. *Id.* For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id.* "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's invention. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This court's claim construction decision must be informed by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that "the *claims* of a patent define the invention to which the patentee is entitled the right to exclude." 415 F.3d at 1312 (emphasis added) (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary

meaning.  *Id*.  The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  *Id*. at 1313.  This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention and that patents are addressed to and intended to be read by others skilled in the particular art.  *Id*.

The primacy of claim terms notwithstanding, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  *Id*.  Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument."  *Id*. at 1315 (quoting *Markman*, 52 F.3d at 978).  Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims.  *Id*. at 1314-17.  As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims."  *Bates v. Coe*, 98 U.S. 31, 38 (1878).  In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.  The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316. Consequently, *Phillips* emphasized the important role the

specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the PTO understood the patent. *Id.* at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.* Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims. *Id.*

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Phillips*, 415 F.3d at 1319-24. The approach suggested by *Texas Digital*—the assignment of a limited role to the specification—was rejected as inconsistent with decisions holding the specification to be the best guide to the meaning of a disputed term. *Id.* at 1320-21. According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id.* at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id.* What is described in the claims flows from the statutory requirement imposed on the patentee to describe and particularly claim what he or she has invented. *Id.* The definitions found in dictionaries,

however, often flow from the editors' objective of assembling all of the possible definitions for a word. *Id*. at 1321-22.

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id*. at 1323-25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

## IV.    AGREED CONSTRUCTIONS IN THE PATENTS

| Claim Term | Agreed Construction |
|---|---|
| **Shell** ['852 Patent: Claim 1; '169 Patent: Claims 1, 9, 13-15; '450 Patent: Claims 1, 3, 4, 7, 8] | Hard outer covering |
| **Center of gravity** [''852 Patent: Claim 1; '169 Patent: Claims 1, 9, 13-15; '450 Patent: Claims 1, 2] | The point at which mass is balanced in all orientations within a body |
| **Non-co-linear** ['852 Patent: Claim 1; '169 Patent: Claim 1] | Not in a straight line |
| **Press fitting** ['450 Patent: Claim 8] | Attaching interfering or tightly fitting parts together by pressing |
| **Axis** ['169 Patent: Claims 13-15; 450 Patent: Claim 1] | A reference line from which distances or angles are measured in a coordinate system, for example, the front-to-rear, toe-to-heel, and sole-to-crown orientations of the club head |
| **Axes** ['852 Patent: Claim 1; '169 Patent: Claims 9, 13-15] | Plural of "axis" |
| **Substantially planar** ['450 Patent: Claim 1] | Flat or nearly flat |

| Center-line<br>['169 Patent: Claims 9, 13] | The axis extending from the center of the face to the back portion passing through the middle of the club head |
|---|---|
| Relatively thin<br>['852: 1<br>'169: 1, 9, 13-15] | No construction necessary apart from the construction of "relatively thin shell" |

## V.    TERMS IN DISPUTE IN THE PATENTS

### a.    "Relatively Thin Shell" [']852: 1; ']169: 1 ,9, 13-15][1]

| Representative Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| '169 Patent:<br><br>1. A golf club head comprising:<br><br>**a relatively thin shell** having a plurality of walls that collectively form a hollow club head body comprising a front club head portion having a wall for striking a golf ball, a back club head portion and an original center of gravity prior to addition of any weights; | A shell that is sufficiently thin to enable significant center-of-gravity customization by a user | A hollow shell in which the volume of the interior cavity is at least 50% of the volume of the club head body |

### i.    Parties' Construction Arguments

Plaintiffs argue that their proposed construction of "relatively thin shell" – a shell that is sufficiently thin to enable significant center-of-gravity customization by a user – comports with the specification.  Plaintiffs make many unsupported assertions as to what one of ordinary skill in the art would understand the term to mean.  Essentially, Plaintiffs' argument is that: (1) one skilled in the art would understand that a relatively small club head of a particular mass would have relatively little capability for adjusting the location of the center-of-gravity; (2) by increasing the size of the club head without increasing its mass, one of skill in the art would know that a golfer could place weights at various locations that would permit a significant degree

---

[1] The parties have stipulated that all currently accused Taylor Made R7 and R9 clubs have a "relatively thin shell" as recited in the asserted claims of the '852 and '169 Patents, regardless of which proposed claim construction the court adopts (Dkt. No. 85).

of center-of-gravity customization; (3) this club head of increased size but the same mass as a smaller club head would necessarily have had a relatively thinner shell; and (4) thus, "relatively thin shell" is properly construed to mean "sufficiently thin to enable significant center-of-gravity customization by a user."

Defendant, on the other hand, argues that its proposed construction is consistent with the prosecution history of the patents-in-suit. During prosecution of '852 Patent, the applicant first filed claims reciting:

```
CLAIMS

     1.   A golf club head comprising:
     a golf club head having a housing forming a cavity; and
     a port formed through the housing to allow placement of
          material to adjust the center of gravity of the golf
          club head.
```

Patent Application at 11-13, attached as Exhibit A to Defendant's Responsive Claim Construction Brief, Dkt. No. 78. These claims were rejected under 102(b) as being anticipated by prior art references disclosing essentially sold golf club heads having cavities with weights in them. Office Action of November 1, 2002 at 2-5, attached as Exhibit B to Defendant's Responsive Claim Construction Brief, Dkt. No. 78. To overcome these rejections, the patentee amended the claims to recite:

1.    (Currently Amended) A golf club head comprising:
a golf club head having a <u>substantially hollow</u> housing <u>displacing an exterior volume and having walls</u> forming a cavity <u>therebetween having an interior volume at least 50% as great as said exterior volume</u>; and

May 9, 2003 Amendment at 5, attached as Exhibit C to Defendant's Responsive Claim Construction Brief, Dkt. No. 78. The examiner rejected the amended claims not only as anticipated, but also for lack of written description and indefiniteness under 35 U.S.C. § 112 ¶¶

1, 2.  Office Action of July 24, 2003 at 3-4, attached as Exhibit D to Defendant's Responsive Claim Construction Brief, Dkt. No. 78.  The patentee again amended the claims, replacing "at least 50%" with "major portion."  January 8, 2004 Amendment at 3, attached as Exhibit E to Defendant's Responsive Claim Construction Brief, Dkt. No. 78.  But the examiner again rejected the amended claims for indefiniteness and lack of written description, stating that:

> The applicant appears to be trying to define a hollow club head structure using a rather unconventional and unorthodox approach, which simply makes for a confusing claim…why not simply say that the club head (100) comprises a plurality of relatively thin shell pieces comprising a crown portion (114), a face portion (110), a sole portion and a wall portion (112) that collectively form a hollow body with a substantially empty or voided cavity, with a port formed through the housing to allow placement at one or more positions on an inside surface of at least one of said crown, face, sole and wall portions.

Office Action of February 12, 2004 at 3, attached as Exhibit F to Defendant's Responsive Claim Construction Brief, Dkt. No. 78.  In response, the patentee then amended the claims to recite:

> 1.  (Currently Amended) A golf club head comprising:
>
> ~~a golf club head~~ a relatively thin shell comprising a plurality of walls that collectively form a hollow body with a substantially empty or voided cavity;

July 19, 2004 Amendment at 7, attached as Exhibit G to Defendant's Responsive Claim Construction Brief, Dkt. No. 78.

In making his final amendments, the patentee explained that although he did not agree with the examiner that the "major portion" language was indefinite, he would amend the claims to essentially mirror the examiner's suggestions merely out of deference.  *Id.* at 7.  The patentee stated that:

> [a]lthough the claims have been amended, it is respectfully pointed out that the foregoing amendments are made to facilitate allowance of the application, not for purposes of patentability.  *It is Applicant's position that the prior claims met the requirements of 35 U.S.C 112, first and second paragraphs, and no reduction in claim scope is intended*.

*Id.* at 8.   Defendant argues that the patentee's statement makes it clear that the he intended "relatively thin shell" to mean that the cavity volume is at least 50%, or the major portion, of the volume or displacement of the club head body.   As such, Defendant contends that "relatively thin shell" should be construed to mean "a hollow shell in which the volume of the interior cavity is at least 50% of the volume of the club head body."

### ii.   Analysis

The specification of the '852 and '169 Patents do not provide guidance as to the meaning of the claim phrase "relatively thin shell."   The specification merely references a "hollow golf club head" throughout, and includes drawings (Figures 1 and 4) that depict portions of the shell that might be deemed "relatively thin" in the places shown.   These depictions, however, do not help to define "relatively thin shell" because "it is well established that patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue."   *Hockerson-Halberstadt, Inc. v. Avia Group Int'l*, 222 F.3d 951, 956 (Fed. Cir. 2000).

Furthermore, the court rejects Plaintiffs' proposed construction because it does not comport with the prosecution history of the '852 Patent.   As discussed above, during prosecution the examiner rejected the "at least 50%" and "major portion" language of the proposed claims and suggested the "relatively thin shell" language.   When the patentee adopted the examiner's suggestion, the patentee did not equate "relatively thin shell" to the ability to achieve significant movement of the center-of-gravity, as Plaintiffs now propose.   Rather, the patentee equated his "relatively thin" language to his original contention that the interior cavity volume was at least 50% of the exterior volume.   As such, Plaintiffs' position that a "relatively thin shell" refers to

the ability to make a significant change in the center-of-gravity seems to be an unsupportable afterthought.

As Defendant points out, the prosecution history provides strong support for construing "relatively thin shell" to means "a hollow shell in which the volume of the interior cavity is at least 50% of the volume of the club head body." Although the prosecution history ordinarily represents an ongoing negotiation between the patentee and the examiner, in this case, the patentee indicated that he was not negotiating with the examiner. Rather, when the patentee replaced his "at least 50%" language with the examiner's proposed "relatively thin shell" language, he confirmed that the "prior claims [containing the "at least 50%" language] met the requirements of…[§ 112 ¶¶ (1) and (2)]…, and no reduction in claim scope is intended." As such, the patentee stated that he adopted the examiner's "relatively thin shell" language merely because it mirrored his "at least 50%" language. One of ordinary skill in the art would take the patentee at his word and equate the claimed "relatively thin shell" with the "at least 50%" language used in the prosecution history – especially in light of the fact that the specification provides no assistance in construing "relatively thin shell." Furthermore, based on Defendant's stipulation that it would not maintain a § 112 ¶¶ (1) or (2) invalidity defense if the court adopted the "at least 50% language," Plaintiffs stated during the claim construction hearing that Defendant's proposed construction was no longer problematic. The court, therefore, construes "relatively thin shell" to mean "a hollow shell in which the volume of the interior cavity is at least 50% of the volume of the club head body."

### b.  "Thin"  ['852: 1; '169: 1, 9, 13-15; '450: 1][2]

| Representative Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **'169 Patent:**<br><br>1. A golf club head comprising:<br><br>a relatively **thin** shell having a plurality of walls that collectively form a hollow club head body comprising a front club head portion having a wall for striking a golf ball, a back club head portion and an original center of gravity prior to addition of any weights;<br><br>**'450 Patent:**<br><br>1. A method for adjusting a center of gravity of a golf club head after its manufacture, the golf club including a head comprising a hollow shell having a plurality of **thin** walls that collectively form a club head, the club head including a face for striking a golf ball, a heel portion, a toe portion, a back portion and a sole and having an original center of gravity prior to addition of any weights, the club head further including a plurality of user-attachable and detachable, discrete weights arranged on the shell at spaced-apart locations, the method comprising: | Thin [plain meaning] | No construction necessary apart from the construction of "relatively thin shell" |

### i.  The Parties' Construction Arguments

Plaintiffs argue that "thin" should be given its plain and ordinary meaning.  Defendant, on the other hand, argues that "thin" should be interpreted in accordance with Defendant's proposed construction for "relatively thin shell."  Defendant correctly recognizes that this proposed construction would render the word "relatively" superfluous, but argues that neither the plain meaning of "thin" nor the patent itself requires a difference in scope between "thin" and "relatively thin."  *Power Mosfet Tech. v. Siemens Ag*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) (stating that "while interpretations that render some portion of the claim language superfluous are disfavored, where neither the plain meaning nor the patent itself commands a difference in

_____

[2] The parties have again stipulated that all currently accused Taylor Made R7 and R9 clubs have "thin walls" as recited in the asserted claims of the '450 Patent, regardless of which proposed construction the court adopts (Dkt. No. 85).

scope between two terms, they may be construed identically."). Defendant relies on YourDictionary.Com, which defines "thin" as something "having relatively little depth," to argue that there is no real difference between the terms "thin" and "relatively thin." YourDictionary.Com, attached as Exhibit K to Defendant's Responsive Claim Construction Brief, Dkt. No. 78.

### ii. Analysis

In Claim 1 of the '852 Patent and Claims 1, 9 and 13-15 of the '169 Patent, the term "thin" appears as follows: "[a] golf club head comprising: a *relatively thin shell* having a plurality of walls that collectively form a hollow club head body…." Claim 1 of the '450 Patent recites "…the golf club including a head comprising a hollow shell having a plurality of *thin walls* that collectively form a club head." There is no discernable difference between the "relatively thin shell having a plurality of walls" in the claims of '852 and '169 Patents and the "shell having a plurality of thin walls" in Claim 1 of the '450 Patent. Furthermore, nothing in the specification indicates that the patentee intended these terms to have a different scope. Considering this, the court construes the term "thin" as used in the '450 Patent consistently with the term "relatively thin shell" as used in the '852 and '169 Patents. As such, the court adopts the following constructions: (1) "relatively thin shell having a plurality of walls" means "a hollow shell in which the volume of the interior cavity is at least 50% of the volume of the club head body;" and (2) "hollow shell having a plurality of thin walls" means "a hollow shell in which the volume of the interior cavity is at least 50% of the volume of the club head body."

### c. "Wall / Walls" ['852:1; '169: 1, 9, 13, 15; '450: 1]

| Representative Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **'169 Patent:**<br><br>1. A golf club head comprising:<br><br>a relatively thin shell having a plurality of **walls** that collectively form a hollow club head body comprising a front club head portion having a **wall** for striking a golf ball, a back club head portion and an original center of gravity prior to addition of any weights;<br><br>**'450 Patent:**<br><br>1. A method for adjusting a center of gravity of a golf club head after its manufacture, the golf club including a head comprising a hollow shell having a plurality of thin **walls** that collectively form a club head, the club head including a face for striking a golf ball, a heel portion, a toe portion, a back portion and a sole and having an original center of gravity prior to addition of any weights, the club head further including a plurality of user-attachable and detachable, discrete weights arranged on the shell at spaced-apart locations, the method comprising: | <u>Distinct</u> <u>structures</u> that form weight attachment surfaces <u>removed from the exposed outer surfaces of the club head</u> | **The claims of the '852 and '169 patents:** The <u>interior surfaces</u> of the shell that form the cavity.<br><br>**Claim 1 of the '450 patent, and in the alternative for the claims of the '852 and '169 patents:** <u>Structures</u> that collectively form a hollow club head body or hollow shell |

### i. The Parties' Construction Arguments

### 1. Structures or Surfaces

The primary argument regarding the construction of the "wall" terms is whether the patents refers to "walls" as three-dimensional structures or two-dimensional surfaces. Plaintiffs contend that the claimed "walls" are three-dimensional structures because they "collectively form a hollow club head body," which is a structure "for striking a golf ball." '169 Patent at Claim 1. According to Plaintiffs, a collection of two-dimensional surfaces of zero thickness and, thus, zero mass could not possibly perform the inherent ball-striking function of a golf club head. Plaintiffs point to Figure 4 in support of their contention that the claimed "walls" denote a three-dimensional structure as opposed to a two-dimensional surface. Figure 4 is a cross-section view

of the integrated "sole and wall portion 112," which, as can be seen below, depicts the sole and wall portion as a three-dimensional structure:



In response, Defendant argues that the "walls" claimed in the '852 and '169 Patents are two-dimensional surfaces, while the "walls" recited in Claim 1 of the '450 Patent are three-dimensional structures. In support of the argument that the "walls" of the '852 and '169 Patents are surfaces, Defendant relies on the following statements from the specification: (1) in discussing the prior art, the patentee explains that "[t]he location that the glue puddles and *adheres to the inner walls* is determined by the orientation of the head…" ['169 Patent at 2:3-5]; and (2) in describing the disclosed embodiments, the patentee states that "Fig. 5 illustrates the hollow golf club head 100 with the crown portion 114 separated from the sole and wall portion 112 and rotated *to face the inner wall towards* the reader…" ['169 Patent at 3:57-63]. Defendant argues that, in these instances, the term "walls" is used to refer to the interior surfaces of the cavity of the hollow club head. Furthermore, Defendant argues that all of the uses of the "wall" terms in the claims of the '852 and '169 Patents are as apt references to two-dimensional surfaces as they are to three-dimensional structures.

With regard to the use of "walls" in Claim 1 the '450 Patent, however, Defendant argues that the claimed "walls" clearly denote a three-dimensional structure. Claim 1 of the '450 Patent recites "the golf club including a head comprising a hollow shell having a plurality of *thin walls*

that collectively form a club head." According to Defendant, this language recites three-dimensional structure because of the inclusion of the modifier "thin" – a two-dimensional surface can have no thickness, so a thin surface would make no sense. Defendant recognizes the axiom that a claim term is presumed to be used consistently throughout a patent, unless the specification or prosecution history make clear that the term has a different meaning. *Rexnord Corp. v. Laitram* Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001). According to Defendant, this is an instance in which the presumption that a term should be construed consistently is rebutted because the term "walls" is used in different contexts in the claims of the patents-in-suit. As such, Defendant proposes that the "walls" referenced in Claim 1 of the '450 Patent should be construed as a structure, while all other "walls" should be construed as surfaces.

## 2. Distinct

The parties also dispute whether the "walls" must be distinct. Plaintiffs contend that the "walls" are distinct structures – i.e., the face portion 110 is one wall, the crown portion 114 is another wall, etc. Defendant, however, argues that the "walls" of the club head cannot be uniquely associated with a specific portion of the head. Plaintiffs argue that although the specification describes and the figures depict the "sole and wall portion 112" as "integrated" [*See, e.g.* '169 Patent at 4:1-3], Figures 1-3 show clear delineations between each of the three largest structures of the club head – the face portion 110, the integrated sole and wall portion 112, and the crown portion 114. For example, Figure 1 depicts:



FIG. 1

100 114 116 124 110 120 122 112 118

As such, Plaintiffs argue that the claimed "walls" are "*distinct* structures that form weight attachment surfaces."

In response, Defendant argues that, other than the reference to the "sole and wall portion 112," the specification does not refer to any portion of the shell as a "wall," much less define each separate portion as a separate wall. Furthermore, Defendant argues that Claim 6 of the '169 Patent further contradicts Plaintiffs' argument that the "walls" of the invention are distinct structures. Claim 6 recites "[t]he golf club head defined in claim 4, wherein substantially all of said weight attached to said screwably attached member is generally close to but inside a plane defined by the *walls* that are in the vicinity of said *recess*." The recess disclosed in the patents is formed entirely within one portion of the club head, such as the sole or the crown portion. *See* '169 Patent at Figs. 2-5. According to Defendant, Claim 6 defines the portion containing the recess as multiple non-distinct walls. As such, Defendant argues that this limitation is nonsensical if "walls" is construed to refer to separate and distinct portions of the golf club head.

### 3. Interior

Finally, the parties seem to agree that the construction of walls must in some way specify that the weights are attached to the interior of the walls. The drawings and specification of the patents-in-suit show and describe only embodiments of club heads that have the weighting materials secured to the interior surfaces, or inner walls, of the hollow club head. *See, e.g.*, '169

Patent at 2:21-23; '450 Patent at 3:17-20; '852 Patent at 2:8-14, 2:51-52, 3:6-8, 3:47-50, 4:56-62. Thus, the parties agree that construing "walls" to require that the weights may only be attached to the interior of the shell both secures to the patentee his actual invention and preserves the validity of his claims.

The parties, however, propose different terminology in seeking to capture this limitation. Plaintiffs propose that "walls" be limited to "distinct structures that form weight attachment surfaces *removed from the exposed outer surfaces of the club head*." Defendant, on the other hand, proposes that the claimed walls must be "the *interior* surfaces of the shell that form the cavity."

### ii. Analysis

Defendant's argument that "walls" connote two-dimensional interior surfaces as opposed to three-dimensional structures is unconvincing. First, this construction would make no sense in the context of Claim 1 of the '169 Patent. Claim 1 recites "[a] golf club head comprising: a relatively thin shell having a plurality of walls that collectively form a hollow club head body comprising a front club head portion having a *wall for striking a golf ball*…." The claim language "a wall for striking a golf ball," refers to one of the claimed "plurality of walls." Considering that at least one wall of the invention must be able to strike a golf ball, the plurality of walls cannot merely refer to an interior two-dimensional surface – i.e., the golf ball would never come in contact with an interior surface.

Second, the patentee knew how to claim a surface. For example, the patentee used the following language three times in the claims of the '169 Patent:

> said plurality of arrangements being user-selectable after manufacture of the club head by detaching and detachably securing any of the plurality of weights to the club head, the weights *extending inwardly of the outer surface of the shell* when detachably secured to the club head in any of the plurality of arrangements….

'169 Patent at Claims 13, 14, and 15. By contrast, the patentee used the term "wall" in the relevant claim language as follows: "[a] golf club head comprising: a relatively *thin shell having a plurality of walls* that collectively form a hollow club head body…." A comparison of the relevant claim language indicates that the patentee did not intend the term "wall" to stand as a substitute for "surface." As such, the court rejects Defendant's contention that the "walls" of the club head are the interior "surfaces" of the club head.

Plaintiffs propose that the claimed "walls" are three-dimensional structures. This construction is consistent with the description of the invention – i.e., Figures 1, 3, and 4 depict "walls" with depth. Furthermore, it does not run afoul of any of claim limitations necessitating "walls." Defining "walls" as structures in and of themselves comports with Claim 1 of the '169 patent, which requires "a wall for striking a golf ball." This definition also comports with the use of "walls" in Claim 1 of the '450 Patent which requires a "golf club including a head comprising a hollow shell having a plurality of *thin walls* that collectively form a club head." As such, the court agrees with Plaintiffs' argument that the "walls" of the invention connote "structures."

The Defendant submits that an inconsistency will be created if the court construes "walls" to denote "structures." This inconsistency arises from the fact that the parties have agreed to a construction of "sole" as meaning the "bottom *surface* of the club head that ordinarily touches the ground at the address position of a golf swing." The court concludes, however, that the parties' agreed construction is incorrect. The specification of the patents-in-suit state that "the weighting port may be of a different shape and/or there may be a different method of accessing the interior of the club head, such as *removing the sole of the club head*, the back of the club head, or the like." '169 Patent at 5:7-14. This language indicates that the sole is not

merely a "surface," for a two-dimensional surface could not be removed. A three-dimensional structure, however, could be removed. Furthermore, throughout the specification the sole is referred to as "the integrated *sole and wall* portion 112." As such, the court concludes that the term "sole" means "the bottom *structure* of the club head that ordinarily touches the ground at the address position of a golf swing."

With regard to whether the "walls" of the invention must be distinct, the Defendant's central argument is that Claim 6 of the '169 Patent is nonsensical if the walls of the club are distinct. This argument is unpersuasive. Claim 6 recites "[t]he golf club head defined in Claim 4, wherein substantially all of said weight attached to said screwably attached member is generally close to but inside *a plane defined by the walls* that are in the vicinity of said recess." Although it is true that the recess of the claimed invention is always disclosed as being in one portion or wall of the club head, construing walls to be distinct structures does not render Claim 6 nonsensical. The claim language is merely explaining that the plane on which the recess is located is defined by the walls that surround that plane – it does not indicate that the plane containing the recess is composed of multiple non-distinct walls. As such, the court rejects Defendant's argument.

As Plaintiffs pointed out, apart from the integrated sole and wall portion, the specification and the drawings of the patents-in-suit depict the portions of the club head as separate and distinct. '169 Patent at Figure 1, 2, and 3. Furthermore, the patentee explained that there may be different methods of "accessing the interior of the club head, such as removing the sole of the club head, the back of the club head, or the like." *Id*. at 5:7-14. The only way that one could remove the sole or back of the club head so as to reach the interior is if each portion of the club

head is separate and distinct. As such, the court concludes that, in accordance with Plaintiffs' proposed construction, the "walls" of the invention are "distinct" structures.

Finally, both parties agree that the patents-in-suit disavow golf club heads having exterior weight attachment surfaces. They also agree that this disclaimer must be captured in the court's construction of the claimed "walls." The Plaintiffs seek to capture this requirement through the language "removed from the exposed outer surfaces of the club head." However, this language finds no support in the intrinsic record, and thus, the court rejects it. Defendant, on the other hand, proposes that the court specify that it is the "interior" surface of the walls that allow for weight attachment. The patents-in-suit continuously refer to the "interior cavity 118." '169 Patent at 2:55-62. It is in this "interior cavity" that the weighting material is placed. *Id.* at 2:61-64 (stating that "[a] removable port cover 120 provides access to the interior cavity 118, allowing placement of weighting material, such as lead tape, into the interior cavity 118."). As such, the court concludes that the weighting material must be placed on the "interior" of the "walls."

In conclusion, the court adopts the following constructions: (1) "wall" means "a distinct structure that forms a weight attachment surface on the interior of the shell;" and (2) "sole" means "the bottom structure of the club head that ordinarily touches the ground at the address position of a golf swing."

**d.** **"Substantially empty or voided cavity" ['852: 1; '169: 9, 13-15]**

| Representative Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| '169 Patent:<br><br>9. A golf club head comprising:<br><br>a relatively thin shell comprising a plurality of walls that collectively form a hollow body with a **substantially empty or voided cavity**; | Substantially empty or voided cavity [plain meaning, no construction necessary] | A space defined solely by the walls of the shell and devoid or nearly devoid of any other structures. |

**i.** **The Parties' Proposed Constructions**

Claim 1 of the '852 Patent recites "[a] golf club head comprising: a relatively thin shell comprising a plurality of walls that collectively form a hollow body with a *substantially empty or voided cavity*…." Plaintiffs contend that "substantially empty or voided cavity" is used according to its plain and ordinary meaning and, as such, needs no construction. Defendant, however, argues that this phrase has no ordinary and customary meaning in the context of the patents-in-suit. Therefore, Defendant argues that, if the court fails to provide a construction, the jury would be left guessing what this phrase means.

Defendant, therefore, proposes that the court construe "substantially empty or voided cavity" to mean "[a] space defined solely by the walls of the shell and devoid or nearly devoid of any other structures." According to Defendant, this construction comports with the prosecution history of '852 Patent. As discussed above, during prosecution of the '852 Patent the patentee attempted to distinguish prior art by amending the claims to require that the club head be a substantially hollow housing in which the cavity has "an interior volume at least 50% as great as said exterior volume." Defendant argues that this amendment illustrates that the patentee intended the cavity of the club head to be "devoid or nearly devoid of any other structures."

### ii. Analysis

Defendant's proposed construction merely rewords the claims of the '169 and '852 Patents. Defendant urges the court to construe "substantially empty and voided cavity" as "[a] space defined solely by the walls of the shell and devoid or nearly devoid of any other structures." But the claim language itself captures this construction. The claims recite "a relatively thin shell comprising a plurality of walls that collectively form a hollow body with a substantially empty or voided cavity…." The claims explain that the hollow shell is formed (or defined) by a plurality of walls and that this hollow shell has a substantially empty (or devoid of any other structures) cavity (or space). Furthermore, whereas the patents-in-suit describe and illustrate the club head as having a cavity that is substantially empty, the patents nowhere describe a "space" that is "devoid or nearly devoid" of other structures. As such, the court adopts Plaintiffs' proposed ordinary meaning construction – further construction of this term will not assist the jury in deciding the infringement issues.

### e.  Secured; Securable; Securing [852: 1; '169: 1, 9, 10, 13-15; '450: 1, 3, 5-7]

| Representative Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **'169 Patent:**<br><br>1. A golf club head comprising:<br><br>a relatively thin shell having a plurality of walls that collectively form a hollow club head body comprising a front club head portion having a wall for striking a golf ball, a back club head portion and an original center of gravity prior to addition of any weights;<br><br>at least four weights readily user-repositionably **secured** to said shell of said club head at readily user-accessible spaced-apart locations along the walls of the shell to adjust the center of gravity of the golf club head body; | Secured; securable; securing [plain meaning; no construction necessary] | Fastened directly to (when used in reference to the weights). |

### Attached ['852: 1; '169: 2, 3, 5-7; '450: 4]

| Representative Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **'169 Patent:**<br><br>2. The golf club head defined in claim 1 further comprising:<br><br>a recess in said body, and<br><br>wherein at least one of said weights is attached to a member disposed in said recess and detachably and user-accessibly screwably **attached** to said body. | Attached [plain meaning; no construction necessary] | Fastened directly to (when used in reference to the weights). |

### Coupling / Coupled ['169: 14, 15 (verb forms); '450: 5, 6 (used as a noun)]

| Representative Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **'169 Patent:**<br><br>14. A golf club, comprising:<br><br>….<br><br>a plurality of discrete weights user-detachably secured to the shell of the club head at readily user-accessible…;<br><br>a port defined in the shell of the club head;<br><br>a member **coupling** one of the plurality of weights to the club head at the port; and<br><br>**'450 Patent:**<br><br>5. The method of claim 1, wherein one of the plurality of weights is detachably secured to the head by a threaded **coupling**. | Coupling; coupled [plain meaning; no construction necessary] | **Claims 14 and 15 of '169 Patent (verb forms):** Fastened directly to (when used in reference to the weights).<br><br>**Claims 5 and 6 of '450 Patent ("coupling" used as a noun):** A device that serves to connect the ends of adjacent parts or objects. |

All of the asserted claims of the patents-in-suit require the weights to be "secured" or "securable" to the shell or walls of the shell, or require the act of "securing" the weights to the walls of the shell. Claims 2, 3, and 5-7 of the '169 Patent and Claim 4 of the '450 Patent requires that at least one of the plurality of weights is "attached" to a member (e.g., the port cover), and that the member is then "attached" to (e.g., screwed into) the shell. And Claim 14 and 15 of the '169 Patent requires one of the plurality of weights to be "coupled" the club head at the port, while Claims 5 and 6 of the '450 Patent require the weights to be secured by a "coupling." The primary dispute regarding these terms is whether the terms should be construed to require that the thing secured, attached, or coupled be "fastened directly to" its target.

### i. The Parties' Proposed Construction

Plaintiffs assert that these terms need no construction because they are used in a context reflecting their plain and ordinary meanings. Defendant, however, argues that the plain and ordinary meaning of the terms fails to take into account the context of the claims. According to Defendant, in the context of the claims, the weights can only be fastened directly to the walls or interior surfaces of the cavity. For example, Claim 1 of '852 Patent requires that the weights be "secured to said shell of said club head," and since the shell is a "substantially voided or empty cavity," there are no structures within the cavity to which the weights can be secured. Accordingly, Defendant argues that weights "secured" to the wall are weights that are "fastened directly to" the wall. Defendant repeats essentially the same argument for the "attached" terms and the "coupled" terms as used in Claim 14 and 15 of the '169 Patent.

Defendant, however, recognized that its proposed "fastened directly to" construction is not appropriate for "coupling" as used in the context of the '450 Patent. In the '450 Patent, coupling is used as a noun – not a verb. With respect to these claims, Defendant submits that

"coupling" should be construed to mean "a device that serves to connect the ends of adjacent parts or objects" – e.g., the weighting port cover 120. Defendant argues that this is an instance where a term is used differently in different contexts in the claims, and therefore should be given a different meaning.

### ii. Analysis

The court rejects Defendant's proposed "fastened directly to" construction. The specification uses the expression "securely fastened" in discussing the weight port cover, which indicates that if the patentee meant the secured, attached, and coupled terms to mean "fastened" he would have said as much. Tellingly, however, neither the claims nor the specification employ the phrase "securely fastened" in discussing the attachment of the weights to the walls of the club head. As such, Defendant's proposed "fastened directly to" construction is not supportable.

Nothing in the patents indicates that the patentee used the secured, attached, and coupled terms in the '589 and '169 Patents in a manner inconsistent with their ordinary meaning. Furthermore, the "threaded coupling" claimed in the '450 Patent is also used in a context reflecting its plain and ordinary meaning – i.e., the threaded coupling secures the plurality of weights. As such, the court concludes that the "secured," "attached," "coupled," and "coupling" terms are used in a context that reflects their plain and ordinary meaning, and therefore, the court construes them in accordance therewith.

### f. Opening ['852: 1]

| Representative Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **'852 Patent:**<br><br>1. A golf club head comprising:<br><br>a relatively thin shell comprising a plurality of walls that collectively form a hollow body with a substantially empty or voided cavity;<br><br>said club head having an **opening** defined therein; | A recessed portion <u>defining a hole</u> in the club head shell. | A <u>hole completely through the shell, providing user access to inside the cavity.</u> |

### Port ['169: 9, 10, 14, 15; '450: 3, 4]

| Representative Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **'169 Patent:**<br><br>9. A golf club head comprising:<br><br>a relatively thin shell comprising a plurality of walls that collectively form a hollow body with a substantially empty or voided cavity;<br><br>said club head having **a port** defined therein; | A recessed portion <u>defining a hole</u> in the club head shell. | A <u>hole completely through the shell, providing user access to inside the cavity.</u> |

The parties agree that the terms "opening" and "port" are used interchangeably throughout the patents-in-suit and, therefore, should be construed consistently. They propose different constructions, however.

### i. The Parties' Construction Arguments

The Plaintiffs contend that the inventor acted as his own lexicographer with regard to these claim terms. Plaintiffs rely on the patentee's use of "opening" in Claim 1 of the '852 patent: "…said club head having an *opening* defined therein;…; and a user-accessible threadably attachable *member threadably attached to the opening*," According to plaintiffs, this claim language clearly assigns a structural connotation to the claimed "opening" because the member could not be attached to an empty hole. Plaintiffs go on to argue that the patentee did not use

"opening" to connote just any structure, but rather used "opening" to connote a specific structure disclosed in the preferred embodiments – the "recessed portion 310." Therefore, Plaintiffs argue the claim terms "opening" and "port" are properly construed as "a recessed portion defining a hole in the club head shell."

In response, Defendant does not dispute that the terms "opening" and "port" denote structure in the context of the patents-in-suit, but rather Defendant argues that its proposed construction requiring "a hole completely through the shell" itself denotes structure. Furthermore, Defendant argues that the patents-in-suit lack any clear expression equating the term "opening" with "the recessed portion 310." In fact, the Defendant notes that the term "opening" does not appear anywhere in the specification of the patents-in-suit. Finally, Defendant points out that the patent teaches that the weighting-port cover can be screwed, press-fitted, or latched onto the body of the club head, none of which would require "the recessed portion 310." '169 Patent at 3:45-50. As such, the Defendant urges the court to reject Plaintiffs' contention that the "opening" and "port" must be recessed.

Rather, the Defendant proposes that the court construe "opening" and "port" to mean "[a] hole completely through the shell, providing user access to inside the cavity." Defendant argues that the terms are used throughout the patents to refer to a means of providing access to the interior cavity of the shell, and thus, the "opening" and "port" must extend completely through the shell. *See, e.g., id.* at 2:19-23 ("[t]he golf club comprises club head having a hollow cavity with a weighting port that allows the user to access the cavity.")

### ii. Analysis

Plaintiffs' argument that the "opening" and "port" should be equated with the "recessed portion 310" is not persuasive because the specification states that the "opening" does not have to have a recessed portion. *See id.* at 3:45-50. The specification of the patents-in-suit states that:

> [a] plurality of flush-mounted bolts 122 pass through the weighting-port cover 120 and screw into the recessed portion 310 of the body 116. Alternatively, *other methods, such as a weighting-port cover that screws into the body 116, latches, press-fits, or the like, may be used.*

*Id.* Furthermore, Plaintiffs do not contradict Defendant's argument that these "other methods" do not require the "recessed portion 310." As such, the patentee did not express a clear intention to limit the meaning of "opening" and "port" to recessed holes in the shell of the club head – actually, he did just the opposite. The court, therefore, rejects Plaintiffs' contention that the "opening" and "port" must be "recessed" holes in the shell.

The parties other significant dispute is whether the "opening" and "port" must extend completely through the shell so as to provide user access to the interior cavity of the shell. During the claim construction hearing, Plaintiffs conceded that the opening/port must go completely through the shell. Furthermore, when the claims of the patents-in-suit are read in conjunction with the specification and prosecution history, it is evident that what the patentee actually invented and intended to claim was an club head that allows customization of the center-of-gravity by placing weights *inside* the golf club head. *See, e.g.*, '169 Patent at 2:21-23; '450 Patent at 3:17-20; '852 Patent at 2:8-14, 2:51-52, 3:6-8, 3:47-50, 4:56-62. Although Defendant suggests the language "user" access, it is unclear whether this language would require the user to access the interior of the cavity directly, or whether access could occur through the use of a tool designed for the placement of weights in the interior of the cavity. The claim language is broad

enough to embrace both types of access. The court, therefore, construes the term "opening" and "port" to mean "a hole completely through the shell, providing access to the inside of the cavity."

### g. "Member" ['852: 1; '169: 2]

| Representative Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
| --- | --- | --- |
| **'169 Patent:**<br><br>2. The golf club head defined in claim 1 further comprising: a recess in said body, and wherein at least one of said weights is attached to a **member** disposed in said recess and detachably and user-accessibly screwably attached to said body. | Member [plain meaning; no construction necessary]<br><br>*In the alternative:*<br>Cover | A structure that fits in the "opening," "port" or "recess" and has a weight attachment surface that is part of the walls (interior surfaces) of the shell. |

### i. The Parties' Construction Arguments

Plaintiffs argue that "member," as used in the patents-in-suit, carries its plain and ordinary meaning and, therefore, does not need to be construed. Plaintiffs, however, submit that if the court deems it necessary to construe "member," the court should construe it to mean "a cover." Plaintiffs contend that this construction comports with the specification which refers to the claimed "member" as being "weighting-port cover 120." Defendant, on the other hand, argues that its proposed construction – "a structure that fits in the 'opening,' 'port' or 'recess' and has a weight attachment surface that is part of the walls (interior surfaces) of the shell" – comports with the claims.

### ii. Analysis

The claims reciting the term "member" themselves contain limitations stating (1) what the claimed "member" fits into and (2) whether a weight is attached to that "member." Claim 1 of the '852 Patent requires a "member threadably attached *to the opening*; said threadably attachable member having *a weight user-repositionably secured thereon*." And Claim 2 of the '169 Patent requires that "at least one of said *weights is attached* to a member disposed *in said recess*." As such, Defendant's proposed construction is rejected. Furthermore, the meaning of

the claimed "member" is readily discernable from the claims when they are read in light of the specification.  As such, "member" needs no additional construction.

### h.  "Said threadably attachable member having a weight user-repositionably secured thereon" ['852: 1]

| Representative Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **'852 Patent:**<br><br>1. A golf club head comprising:<br><br>a relatively thin shell comprising a plurality of walls that collectively form a hollow body with a substantially empty or voided cavity;<br><br>said club head having an opening defined therein;<br><br>a plurality of weights readily user-repositionably secured to said shell of said club head at readily user-accessible spaced-apart locations along the walls of the shell to adjust the center of gravity of the golf club head; and<br><br>a user-accessible threadably attached to the opening, **said threadably attachable member having a weight user-repositionably secured thereon;** | Said threadably attachable member having a weight secured thereon such that the weight can be moved to a new position elsewhere within the shell | The threadably attachable member has a weight fastened directly to it, and the weight is detachable from the member to enable the user to move it to another location on the member or elsewhere on the interior surfaces of the cavity. |

The main dispute with regard to this claim phrase is whether the weight can be repositioned by repositioning the member itself, or whether instead the weight can be repositioned only be detaching it from the member and then reattaching it to another location on the member or elsewhere in the cavity.

### i.  The Parties' Construction Arguments

Plaintiffs' proposed construction mirrors the exact language of the phrase to be construed, except that it defines "user-repositionably."  According the Plaintiffs, apart from this one word, the phrase requires no construction.  Plaintiffs contend that "user-repositionably" means that "the weights can be moved to new positions elsewhere within the shell."  As such, Plaintiffs propose that "said threadably attachable member having a weight user-repositionably secured thereon" should be construed to mean "said threadably attachable member having a

weight secured thereon *such that the weight can be moved to a new position elsewhere within the shell*."

Defendant argues that Plaintiffs' proposed construction is erroneous because it would allow the weights to be repositioned by repositioning the member itself as opposed to removing the weights from the member and repositioning them on either the member or elsewhere in the cavity. Defendant notes that the patents-in-suit do not disclose a "member" that is itself repositionable.

### ii. Analysis

Plaintiffs do not contend that "user-repositionably" means that the user can reposition the weights by repositioning the member itself. Furthermore, there is no support for such a construction in the patents-in-suit. As such, the court construes the phrase "said threadably attachable member having a weight user-repositionably secured thereon" to mean "the said threadably attachable member has a weight secured thereon such that the weight is detachable from the member to enable the user to move the weight to another location on the member or elsewhere within the shell."

### i. "Extending inwardly of the outer surface of the shell" ['169: 13-15]

| Representative Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **'169 Patent:**<br><br>13. A golf club, comprising:<br><br>a club head comprised of a relatively thin shell, the thin shell comprised of a plurality of walls that collectively form a hollow body with a substantially empty or voided cavity, the club head including a face for striking a golf ball, a heel portion, a toe portion and a back portion, the club head having a first axis extending between the heel and the toe portions and a second axis extending between the face and the back portion of the club head;<br><br>a plurality of discrete weights user-detachably secured to the shell of the club head at readily user-accessible, spaced-apart locations along the walls of the shell in a plurality of arrangements, said plurality of arrangements being user-selectable after manufacture of the club head by detaching and detachably securing any of the plurality of weights to the club head, the weights **extending inwardly of the outer surface of the shell** when detachably secured to the club head in any of the plurality of arrangements; and | Lying inwardly of the outer surface of the shell | Lying or stretching in an inward direction relative to the outer surface of the shell. |

The parties agree that this limitation should be given its plain meaning, yet the parties disagree as to the substance of that plain meaning. The dispute centers on the definition of "extending."

### i. The Parties' Construction Arguments

Plaintiffs argue that their proposed construction of extending – i.e., "lying" – is supported by the specification. Defendant, on the other hand, argues that nothing in the claims, specification, or prosecution history of the patents-in-suit provides any guidance on the ordinary meaning of "extending." Therefore, Defendant looked to the ordinary dictionary definition of "extend" – i.e. to lie or stretch – to determine the commonly understood meaning of the term. YourDictionary.Com, attached as Exhibit N to Defendant's Responsive Claim Construction Brief, Dkt. No. 78. Thus, according to Defendant, the plain meaning and proper construction of

"extending inwardly of the outer surface of the shell" is "lying or stretching in an inward direction relative to the outer surface of the shell."

### ii. Analysis and Recommendation

Both parties propose that "extending" should be construed to mean "lying," and Plaintiffs are correct that this construction holds true to the specification. Although the specification never mentions an "extending" or "lying" weight, the figures depict the weights lying on the interior cavity of the shell. As such, the court construes "extending" to mean "lying." The court, however, rejects Defendant's proposed "stretching" construction and instead adopts "reaching." As such, the court construes the phrase "extending inwardly of the outer surface of the shell" to mean "lying or reaching in an inward direction relative to the outer surface of the shell."

### j. "At least one of the weights being [is] securable in a location that is substantially non-co-linear with the others of said weights" ['852: 1; '169: 1]

| Representative Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **'852 Patent:**<br><br>1. A golf club head comprising:<br><br>….<br><br>a plurality of weights readily user-repositionably secured to said shell of said club head at readily user-accessible spaced-apart locations along the walls of the shell to adjust the center of gravity of the golf club head; and<br><br>….<br><br>**at least one of said weights being securable in a location that is substantially non-co-linear with the others of said weights** to permit adjustment of the center of gravity of the golf club head in at least two axes, | Not all of the weights lie in a straight line | The "at least one of said weights" is not in a straight line with the "others of said weights," all of which are in a straight line. |

The disputed clause – "at least one of said weights is securable in a location that is substantially non-co-linear with the others of said weights" – is found in Claim 1 of the '852

Patent and Claim 1 of the '169 Patent in substantially the same form. The parties have agreed that the term "non-co-linear" appearing in this disputed clause means "not in a straight line."

### i. The Parties' Construction Arguments

Plaintiffs propose that the disputed phrase should be construed to mean "not all of the weights lie in a straight line." Defendant, on the other hand, urges the court to construe the disputed phrase to mean "the at least one of said weights is not in a straight line with the others of said weights, all of which are in a straight line." Plaintiffs argue that this construction runs afoul of certain disclosed embodiments.

### ii. Analysis

It is helpful to consider the disputed phrase in the context of the immediately preceding and following claim language:

> at least four weights readily user-repositionably secured to said shell of said club head at readily user-accessible spaced-apart locations along the walls of the shell to adjust the center of gravity of the golf club head body;
>
> wherein *at least one of said weights is securable in a location that is substantially non-co-linear with the others of said weights* to permit adjustment of the center of gravity of the golf club head in at least two axes;
>
> wherein at least a portion of one of said weights is user-repositionably disposed behind and to the heel side of said original center of gravity;
>
> wherein at least a portion of one of said weights is user-repositionably disposed behind and to the toe side of said original center of gravity;
>
> wherein at least a portion of each of two of said weights is user-repositionably disposed in front of said original center of gravity;

'169 Patent at Claim 1 (emphasis added). This claim requires "at least" four weights. The claim states that "at least one" of the four or more weights is not in a straight line with the other weights. But the claim does not preclude that more than one weight is out of line with the four or more other weights. If one was working with only four weights, since it takes only two points

to define a line, the claims would read on a club head having two weights at different non-co-linear positions inside the club head. Defendant's construction would preclude this because, as Defendant admits, its construction requires that three of the four weights lie in the same straight line.

Defendant argues that its proposed construction must be adopted because it is supported by the preferred embodiments disclosed in Figure 5, but makes no attempt to identify a clear disavowal of different possible embodiments. Indeed, Defendant could not make such an argument in light of the fact that the patentee explicitly stated that Figure 5:

> illustrates the hollow golf club head 100 with the crown portion 114 separated from the sole and wall portion 112 and rotated to face the inner wall towards the reader in order to *illustrate potential placements* of weighting material in accordance with embodiments of the present invention. The *illustrated positions are presented for illustrative purposes only and, therefore, should not limit the present invention in any manner.* Furthermore, *the positions shown may be used individually or in combination to further customize the location of the center of gravity.*

'169 Patent at 3:60-67. The patentee could not have made it more clear that he had no intention of limiting the broad claim language in accordance with the weight locations depicted in Figure 5. Furthermore, although Defendant's proposed construction might be supported by one embodiment disclosed in Figure 5, it would fail to read on at least one other embodiment disclosed in Figure 5 – i.e., weight locations 522, 518, 510, and 526. *Vitronics Corp., v. Conceptronic, Inc.*, 90 F3d 1576, 1583 (Fed. Cir. 1996) (explaining that an interpretation of a claim term that would exclude a preferred embodiment "is rarely, if ever, correct and would require highly persuasive support"). The court, therefore, rejects Defendant's proposed construction.

Considering that, as discussed above, any two points define a straight line, Plaintiffs' proposed construction – "not all of the weights lie in a straight line" – is consistent with the

claim language and the embodiments disclosed in the specification. The court therefore adopts Plaintiffs' proposed construction.

### k. "Press fitting at least one of the plurality of weights to the shell" ['450: 8]

| Representative Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **'450 Patent:**<br><br>8. The method of claim 1, wherein the step of forming the second arrangement with the plurality of weights further comprises **press fitting at least one of the plurality of weights to the shell**. | Securing at least one of the weights to the shell by press fitting | At least one of the weights itself is press fit to the shell [plain meaning]. |

The dispute regarding this term centers on whether the disputed phrase, when read in conjunction with the specification, is amenable to a construction that would resolve an admitted ambiguity in the claim language.

#### i. The Parties' Construction Arguments

Claim 8 of the '450 Patent recites "[t]he method of claim 1, wherein the step of forming the second arrangement with the plurality of weights further comprises *press fitting at least one of the plurality of weights to the shell*." The Plaintiffs admit that there is no disclosure in the specification of press fitting a weight to the shell. However, Plaintiffs argue that one skilled in the art would have understood the claim language to require a two-step process because the only press fitting described in the specification is press fitting a *member* to the shell. '450 Patent at 4:41-43 ("[a]lternatively, other methods, such as a weighting-port cover that screws into the body 116, latches, *press-fits*, or the like, may be used" to attach the member to the shell). Plaintiffs, thus, contend that one skill in the art would have known that the following two-step process was required by Claim 8: (1) attaching a weight to the inner surface of the member; and then (2) securing the member to the shell by press fitting. As such, Plaintiffs urge the court to uphold the validity of Claim 8 by interpreting it in a manner that would allow for this two-step

process to take place – i.e., securing at least one of the weights to the shell by press fitting.  This construction would permit the weight to be secured to the shell by press fitting a member to the shell, where the weight was previously secured to the member.

In response, Defendant argues that the Plaintiffs' proposed construction should be rejected because it asks the court to improperly rewrite the claim language.  Rather, Defendant argues that this limitation should be given its plain meaning – i.e., that one of the weights *itself* is press fit to the shell – because the claim language is unambiguous..

### ii.  Analysis

When the disputed phrase is read in the context of the claims and the specification, the phrase is susceptible to Plaintiffs' proposed construction.  Claims 5, 6 and 8 of the '450 Patent recite:

> 5. The method of claim 1, wherein one of the plurality of weights is *detachably secured to the head by a threaded coupling*.

> 6. The method of claim 1, wherein at least one of the plurality of weights is *detachably secured to the head by a threaded coupling*.

> 8. The method of claim 1, wherein the step of forming the second arrangement with the plurality of weights further comprises *press fitting at least one of the plurality of weights to the shell*.

Claims 5 and 6 explain the two step-process Plaintiffs discuss above and do not run afoul of § 112 ¶ 1 because the weights are "detachably secured" by a threaded coupling.  The specification describes the claimed threaded coupling as the weight port cover 120 that is screwed into the club head.  '450 Patent at 4:39-45.  Claims 5 and 6 require the weight to be first attached to the member and then attached to the club head by the threaded coupling.  As such, they fully comply with the written description requirement of § 112 ¶ 2.

As illustrated above, Claims 5 and 6 are followed by Claim 8, which requires press fitting the weights to the shell. The specification discusses the process of press fitting in the same paragraph as it describes "threaded coupling:"

> The plurality of flush-mounted bolts 122 pass through the weighting-port cover 120 and screw into the recessed portion 310 of the body 116. Alternatively, other methods, such as a weighting-port cover that screws into the body 116, latches, press-fits, or the like, may be used.

'450 Patent at 4:39-45. Accordingly, the claim language is readily susceptible to an interpretation allowing the weights to be press fit by a two-step process, including first attaching the weight to the member and then press fitting the member to the club head. As such, the court rejects Defendant's proposed ordinary meaning construction because it would preclude this two step process and render Claim 8 invalid.

The court adopts Plaintiffs' proposed construction because it captures the meaning of the disputed term when the term is read in light of the surrounding claim language and the specification. In accordance, the court construes "press fitting at least one of the plurality of weights to the shell" to mean "securing at least one of the weights to the shell by press fitting."

## VI.    CONCLUSION

The court adopts the constructions set forth in this opinion for the disputed terms of the '852, '169, and '450 Patents. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the court.

It is so ORDERED.

SIGNED this 22nd day of March, 2011.


_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE